Steve PATTON, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–583A127.

Court of Appeals of Indiana,
First District.

Jan. 16, 1984.

Briane M. House, Lineback & Lewis, P.C., Greenfield, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

STATEMENT OF THE CASE

Defendant-appellant, Steve Patton (Patton), appeals the imposition of an executed

sentence by the Hancock Superior Court upon a plea of guilty to theft, a Class D felony, pursuant to a written plea agreement.

We affirm.

## STATEMENT OF THE RECORD

On January 14, 1982, Patton was charged by information with forgery, a Class C felony, of an endorsement on a stolen $31.00 check from Eli Lilly and Company which he passed at the Greenfield Banking Company. The record discloses that this check was one of a series of checks taken in the same manner by Patton during his employment as a janitor at Lilly, which series totaled $2,405.13. After entering a plea of not guilty, Patton obtained continuances of trial dates of March 10, June 14, and November 29, and the case was set for trial finally on January 4, 1983 before a jury. On that date, after the jury was called, Patton and the State entered into a written plea agreement, the relevant parts being as follows:

> "[I]t is therefore agreed by the State of Indiana that should the Defendant enter a plea of guilty to the charge of theft the State of Indiana will do the following:
>
> a. Recommend that the Defendant receive a sentence of two years at the Indiana Department of Corrections, unless before sentencing hearing herein Defendant makes full restitution of $2,405.13 to Greenfield Banking Company, in which case the state will recommend a suspended sentence as a class A misdemeanor.
>
> b. Move to dismiss the charge of forgery.
>
> c. Not file any additional charges arising out of the fact situation on which these charges are based."

The count of theft was filed on the trial date and Patton entered his plea of guilty. The court thoroughly advised him of his rights; in particular, that he was not bound by the plea agreement. The trial court

made a factual determination in which Patton admitted forging the signature and cashing the check. The record reflects that Patton faced the potential revocation of probation in Marion County on a prior offense and the jeopardy of consecutive sentences if convicted of a felony here. The court set the sentencing hearing on February 10, and on that date, Patton moved the court, orally, for permission to withdraw his plea of guilty for the reason that he did not believe the state could prove his guilt beyond a reasonable doubt. He offered no factual basis to support such belief, although questioned by the court and attorneys in that regard. He had not made restitution, but upon questioning by the court, indicated that he was financially unable to do so. The court denied Patton's motion to withdraw his plea and imposed the two-year executed sentence pursuant to the terms of the plea agreement.

## *ISSUES*[1]

Patton asserts that:

I. The trial court's imposition of the two-year sentence under the plea agreement was denial of due process and equal protection under the law.

II. The trial court abused its discretion when it refused to allow Patton to withdraw his guilty plea.

*Issue I: Equal protection.*

Patton's principal argument is that his constitutional rights guaranteed by the Equal Protection clause of the Fourteenth Amendment were violated because he was unable to make restitution; therefore, he was imprisoned solely because he lacked the financial resources to make the "mandated" restitution. He relies totally upon *Bearden v. Georgia*, (1983) —— U.S. ——, 103 S.Ct. 2064, 76 L.Ed.2d 221. An extensive analysis of that case is necessary.

■ In *Bearden*, the defendant pleaded guilty to burglary and theft and disposition

---

1. The reader may inquire whether or not Patton could challenge a guilty plea on a direct appeal rather than in a post-conviction proceeding.

That question is not raised by the State, but in the interest of judicial economy, we will address the merits of this dispute.

was made pursuant to the Georgia First Offender's Act, so that the court did not enter a judgment of guilty, but deferred further proceedings and sentenced Bearden to three years probation for the theft charge. As a condition of probation, Bearden was ordered to pay a $500.00 fine and $250.00 restitution. Bearden paid $200.00, but upon being unable to pay the remainder of the fine and restitution because he lost his job and was unsuccessful in finding another, the probation was revoked. Relying upon *Williams v. Illinois,* (1970) 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586, and *Tate v. Short,* (1971) 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130, the Supreme Court of the United States held that:

> "... If the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it."

*Bearden, supra,* 103 S.Ct. at 2070.

The above rule does not apply to willful refusal to exert bona fide efforts to pay a fine or restitution. The court added:

> "A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially whether the state's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. [citations omitted]. As we said in *Williams v. Illinois,* 'after having taken into consideration the wide range of factors underlying the exercise of his sentencing function, *nothing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty* prescribed by law.' [citations omitted].
>
> The decision to place the defendant on probation, however, reflects a determining by the sentencing court that the State's penological interests do not require imprisonment. [citations omitted]."

*Bearden, supra,* 103 S.Ct. at 2071.

In footnote 8, the *Bearden* court stated:

> "When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting 'the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished'. [citations omitted]. The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process."

*Bearden, supra,* 103 S.Ct. 2069, n. 8.

*Bearden* is substantially distinguishable from the instant case. Here, no suspended sentence, probation or condition was imposed in the sentence as in *Bearden.* No plea bargain was involved in *Bearden* wherein heavier felony charges were dismissed and numerous other heavier felony charges would not be filed. In addition, there was a real possibility in the present case that if the court entered a felony punishment, Marion County would revoke his pending probation on a prior sentence, and the new sentence would run consecutively with that sentence.

■ Our Supreme Court, in *State ex rel Goldsmith v. Marion County Superior Court,* (1981) Ind., 419 N.E.2d 109, discussed the nature of a plea bargain:

> "The concept of plea bargain contemplates an explicit agreement between the State and defendant which is binding upon both parties when accepted by the trial court. To allow the trial court to either increase or suspend the executed sentence, would deny the parties the essential purpose of the agreement. It is to the interest of both the defendant and the public to facilitate expeditious disposition of criminal cases. Strict adherence to the agreement is essential to this purpose."

*Goldsmith, supra,* at 114.

When a court accepts a plea agreement, it is bound by the sentencing provision of the

agreement but is also foreclosed from any further exercise of its sentencing discretion. IND.CODE 35–35–3–3(d); *Munger v. State*, (1981) Ind.App., 420 N.E.2d 1380; *Dolan v. State*, (1981) Ind.App., 420 N.E.2d 1364.

■ Similarly, on the defendant's part, when he pleads guilty pursuant to a plea agreement, he knowingly and voluntarily recognizes and admits that the sentence is manifestly fair. *Munger, supra.*

■ As indicated above, in the instant case, probation was never granted by the court on the condition of payment of a fine or restitution, and the Prosecuting Attorney did not promise to recommend any suspension of the sentence or probation unless Patton could, prior to sentencing, make restitution. At the time Patton accepted the benefits of the plea bargain, which included dismissal and abstention from filing of heavier felonies, he knew better than anyone whether he had the ability to raise the money, and the risk he ran if he did not. To use the expression in the *Bearden* footnote, *supra*, at this stage, Patton's "level of financial resources [was] a point on a spectrum rather than a classification". The Prosecuting Attorney had a legitimate interest in balancing the interest of the victim in receiving restitution for the loss and the penological interests of the State. Moreover, we consider the present situation a stage removed from the operation of *Bearden*. In *Bearden*, the essence of the facts was that the trial court imposed conditions upon a defendant which were mandated at least in part by the Georgia First Offender's Act. The defendant was unable to perform the conditions through no fault of his own. Conversely, in the instant case, there was no implicit determination by the sentencing court, as in *Bearden*, that imprisonment is not required. That determination is apparently the cornerstone of the *Bearden* decision. Further, there are other matters here, such as prior conviction, current probation status and numerous other stolen checks

which justified imprisonment. See *Munger, supra.*

We find no error here.

*Issue II: Withdrawal of plea.*

■ IND.CODE 35–35–1–4(b) provides that the trial court may allow a defendant to withdraw this plea of guilty "... for any fair and just reason unless the state has been substantially prejudiced ...". This section requires the motion to be in writing and verified; stated facts in support of the relief are demanded. The ruling of the trial court will be reviewed only for an abuse of discretion. *Comstock v. State*, (1981) Ind.App., 422 N.E.2d 395.

■ Patton argues that the totality of the circumstances is that he made a good faith effort to make restitution and if given only a bit more time, he may have been able to do so. Patton contends that his "request to withdraw his plea was one last desperate effort to gain more time or a second change". The court here was faced by the familiar situation where, after numerous continuances obtained by the defendant, the defendant finally, with the jury already in the box, and the witnesses assembled, takes the best deal remaining while there is still something with which to bargain and pleads guilty. After the witnesses have been dispersed and the jury sent home, the defendant then attempts to start the judicial process all over again at great expense and inconvenience to the court, its staff, witnesses, police departments, lawyers, and jurors. Such acts make a mockery of the criminal justice system. We hold that the trial court did not abuse its discretion in denying Patton's motion improperly made and unsupported by facts, to withdraw his plea of guilty.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON, J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

I concur in the majority opinion and also concur for the additional reasons stated in this opinion.

The fallacy of Patton's argument in reliance upon *Bearden v. Georgia,* (1983) —— U.S. ——, 103 S.Ct. 2064, 76 L.Ed.2d 221 is that *Bearden* is a case involving revocation of probation previously granted. This case involves the initial sentencing and the factors which a trial court may consider at the time of pronouncing sentence.

Our statute, Indiana Code section 35–38–1–7 (formerly § 35–4.1–4–7), provides that in determining what sentence to impose the court may consider as mitigating circumstances or as favoring suspending the sentence and imposing probation that the defendant has made or will make restitution. Thus, under this statute, the trial court legitimately could consider whether Patton *had made* restitution in determining what sentence to impose. Such is precisely what Patton bargained for. I do not read *Bearden* as prohibiting the court from considering whether or not restitution had been made in pronouncing sentence initially. In fact, the Supreme Court stated in *Bearden:*

> "Thus, when determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. (Citation omitted.)"

—— U.S. at ——, 103 S.Ct. at 2071, 76 L.Ed.2d at 231.

> "[A] sentencing court can consider a defendant's employment history and financial resources in setting an initial punishment. Such considerations are a necessary part of evaluating the entire background of the defendant in order to tailor an appropriate sentence for the defendant and the crime."

—— U.S. at ——, 103 S.Ct. at 2072, 76 L.Ed.2d at 232.

Likewise, the trial court here, under our statute (Ind.Code 35–38–1–7, formerly Ind. Code 35–4.1–4–7), could consider whether, *at the time of sentencing,* Patton *had made* restitution in order to tailor an appropriate sentence for him and the crime. Nothing in *Bearden* prohibits this.

There is no right to probation or a suspended sentence. Granting of suspended sentences and probation is an act of grace and is wholly discretionary. *Farmer v. State,* (1971) 257 Ind. 511, 275 N.E.2d 783; *Davis v. State,* (1971) 256 Ind. 58, 267 N.E.2d 63. In determining whether to exercise that discretion in favor of granting probation as a matter of grace, the trial court may consider all relevant factors. Whether the defendant had made restitution is a relevant factor.

This is not a case where probation, once granted, was revoked for failure to make restitution without any showing of either ability to pay or a good faith effort to do so. Had that been the case, *Bearden* would be applicable and controlling. Such, however, is not the case. This case involves the initial sentencing pursuant to a plea bargain. *Bearden* does not prohibit what happened here.